# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

KATRINA FRAZIER,         )
      Plaintiff,        )
                   )
v.                    )       CIVIL ACTION NO. 1:16-00400-KD-MU
                   )
CITY OF MOBILE, ALABAMA; MOBILE )
COUNTY PERSONNEL BOARD,    )
      Defendants.      )

## ORDER

Katrina Frazier is a longtime City of Mobile employee who sued the City for race and gender discrimination and retaliation after not receiving a number of promotions. (Doc. 1). Before the Court are the Defendants' Motions for Summary Judgment (Docs. 39 & 42), Plaintiff's Response (Doc. 49), and the Defendant's Reply (Doc. 52) as well as accompanying statements of fact and evidentiary material. For the following reasons, Defendants' Motions are **GRANTED**.

## I.   <u>Introduction</u>

The plaintiff, Katrina Frazier, is an African American female employed by the City of Mobile, Alabama. Frazier sued the defendants, City of Mobile and Mobile County Personnel Board [hereinafter "the City"], in August 2016. She alleges two counts against the City. Both counts are brought pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (Doc. 1 at ¶ 1). Count I, a gender and retaliation claim, alleges the City unlawfully discriminated against Frazier based upon her gender in not promoting her to Superintendent of Recreation in July 2014 and Director of Parks and Recreation in August 2014.[1] (Doc. 1 at ¶ 56). In Count I Frazier also alleged she was not promoted three times in retaliation for her engagement in a protected activity: in late 2014, for the

---

[1] In her Response to Summary Judgment, Frazier conceded and withdrew two additional claims based upon her gender. (Doc. 49 at 23 n. 3).

position of Recreation Program Supervisor and for the second vacancies of Superintendent of Recreation and Director of Parks and Recreation in 2015 and 2016, respectively. (Doc. 1 at ¶ 61). Count II alleges the City unlawfully discriminated against Frazier based on her race for failure to promote her to Recreation Program Supervisor. (Doc. 1 at ¶ 74). Frazier also repeats her assertion that she was not promoted in retaliation for her protected activity. (Doc. 1 at ¶ 78).

Both Defendants filed a Motion for Summary Judgment. (Docs. 39 & 42). The Mobile County Personnel Board ("MCPB") adopted the City's Brief in support of its own motion. (Doc. 42).

## II. <u>Findings of Fact</u>[2]

The City has employed Frazier in some capacity for more than 25 years. (Doc. 48 at 2). She began in 1991 as an Office Assistant, and as of May 2017, she had been promoted to Recreation Program Supervisor. (Doc. 48 at 2). While employed, Frazier received several higher education degrees: an associate's degree in 1994/1995, a bachelor's degree in 2001, and a master's degree in Public Administration/Public Management in 2009. (Doc. 48 at 1). Her career, prior to 2014, entailed several lateral transfers (i.e., from Office Assistant in Architectural to Parks and Recreation) and promotions (i.e., from Office Assistant to Coordinator).

In 2014, Frazier encountered serious headwinds in her effort to professionally advance.

- In July 2014, the City selected another candidate over Frazier for the position of Superintendent of Recreation.

- In August 2014, the City passed over Frazier in filling the position of Director of Parks and Recreation.

---

[2] On summary judgment, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." <u>McDowell v. Brown</u>, 392 F.3d 1283, 1288 (11th Cir. 2004). Also, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1486 (11th Cir. 1996).

- In December 2014, the City did not select Frazier for the position of Recreation Program Supervisor at the Connie Hudson Senior Center.

- In 2015, the City did not fill an open Superintendent of Recreation to which Frazier applied and interviewed. Frazier applied for this position twice (once in July 2014 and again in late 2015 when it became open again) and has interviewed for it three times.

- In 2016, the City did not fill the Director of Parks and Recreation position when it became available again.

MCPB screened and then ranked applicants when a merit position was posted. (Doc. 50-9 at 3 & 5). Those included on the Employment Register and passed along to the City were qualified for the position. (Doc. 50-9 at 6). Frazier was determined to be qualified for each position to which she applied. Frazier contends each denial involved some manifestation of unlawful discrimination, including gender, race, and retaliation. As a result of these contentions, Frazier filed two EEOC Charges of Discrimination.

The structure of the City's workplace is as follows: the Executive Director of Public Works supervises the Parks and Recreation Director. (Doc. 40 at ¶ 8). Two superintendents, the Recreation Superintendent and the Parks Superintendent, report to the Parks and Recreation Director. (Id.). The Recreation Superintendent supervises five department heads. At the time Frazier applied for each promotion, she, in her position as Community Activities Coordinator, reported to one of the five department heads. (Id.).

## A. Superintendent of Recreation

Sherryll White served as Recreation Superintendent until 2012, when the City promoted her to Director of Parks and Recreation. (Doc. 40 at ¶ 9). Her promotion left the Recreation Superintendent position vacant. (Doc. 40 at ¶ 9). Due to a hiring freeze, the City denied White's

request to hire a permanent replacement, but instead granted her authority to select an interim. (Doc. 40 at ¶ 9). White undertook the search to locate a suitable replacement, and ultimately met with three City employees, including Frazier, who indicated their interest. (Doc. 40 at ¶ 10-11). White selected Julious Shine, an African American male, for the interim position. (Doc. 40 at ¶ 11; Doc 43-27 at 17).

Pursuant to MCPB Rule 17, temporary duty assignments, like the one in which Shine was employed, shall not exceed six months. (Doc. 41-8 at 2). By the time White brought this rule to the attention of William Harkins, the Director of Public Works, Shine's employment in the interim capacity exceeded a year. (Doc. 41-9). White sent a letter to Harkins in which White requested Harkins post the position in order to select a person on a permanent basis. (Doc. 41-9). The City posted the job on June 3, 2014. (Doc. 41-1 at 1). The posting limited applicants to "regular employees of the City of Mobile Parks and Recreation Department" who had a bachelor's degree and a minimum of three years administrative experiences in organized recreational activities, **or** a combination of education and experience. (Doc. 40 ¶ 15; Doc. 41-1 at 2). Shine has an Associate's Degree and has completed five years at a university, but he never received a bachelor's degree. (Doc. 43-26 at 2). He began working for the City of Mobile in 1992, and served as Athletic Program Coordinator since 2008. (Doc. 41-11). At the time of his permanent selection, his interim service exceeded one year. (Doc. 41-9).

### B. Director of Parks and Recreation

The City posted the Director of Parks and Recreation position on June 24, 2014. (Doc. 12 at ¶ 25 (citing Doc. 1 at ¶ 24)). As a result of the posting, the MCPB certified three names for consideration, Frazier among them. (Doc. 12 at ¶ 25). Harkins named Dan Otto, a Caucasian male, as the interim director, effective July 1, 2014. (Doc 48 at 14).[3] Otto had worked for the City for more

---

[3] According to Harkin, he considered no one else for the interim position. (Doc. 48 at 14).

than 24 years. (Doc. 40 at ¶ 4). He holds a Bachelor's Degree in Ornamental Horticulture. Prior to his promotion to the interim position, he served as Parks Superintendent. (Doc. 40 at ¶ 4). Harkins then interviewed three candidates for the permanent position and passed over Frazier again, selecting Otto instead. (Doc. 40 at 25-7). Otto was named Director (without the interim designation) less than two months after his installment as interim. (Doc. 48 at 16).

### C. Recreation Program Supervisor – Connie Hudson Senior Center

The City posted the open Recreation Program Supervisor position at the Connie Hudson Senior Center on June 30, 2014, six days after posting the Director of Parks and Recreation position. (Doc. 40 at ¶ 33). Although the applicant pool originally consisted of only people within the division, Mobile Mayor Sandy Stimpson's then-Chief of Staff, Colby Cooper, directed the position be listed as "open competitive" after conversations with Otto and Harkins.[4] (Doc. 40 at ¶ 33). Frazier applied for this position. (Doc. 40 at ¶ 34; Doc. 43-5). The Employment Register for this list included ten names, Frazier among them. From this list, Shine and Otto conducted the first-round interviews after the finalization of the Employment Register on November 18, 2014. (Doc. 40 at ¶ 35). (Frazier filed an EEOC charge on August 15, 2014, in which she alleged sex discrimination related to her being denied promotions to Recreation Superintendent and Director of Parks and Recreation.[5]) Otto became aware of Frazier's EEOC Charge at least by October 14, 2014. (Doc. 50-6 at 9).

Shine and Otto whittled the candidates down in order to provide Harkins with three interviewees. (Doc. 40 at ¶ 35). Frazier did not advance to the final interview with Harkins. (Doc. 48 at 18). The three who did advance included Ashley Flowers, Therese Fulford, and LaNisha Penn. (Doc. 48 at 18). Penn is an African American female who, at the time of the interview, served as the

---

[4] The "open competitive" designation meant that MCPB would accept applications from individuals already employed and those outside the merit system. (Doc. 50-9 at 3).

[5] Doc. 50-12 at 43.

interim director. (Doc. 40 at 38). Harkins ultimately selected Flowers, a Caucasian woman. (Doc. 40 at ¶ 45). Shortly thereafter, on December 24, 2014, Frazier filed a second Charge of Discrimination with the EEOC, this time alleging the City unlawfully discriminated against her on the basis of race and in retaliation for her engagement in a protected activity by denying her the Recreation Program Supervisor promotion. (Doc. 40 at ¶ 46).

### D. Superintendent of Recreation – Second Vacancy[6]

The City demoted Shine from Superintendent of Recreation in April 2015. (Doc. 48 at 25). To date, the position has not been filled. However, Frazier has applied for the position twice and has interviewed thrice. (Doc. 48 at 25). Otto interviewed Frazier on November 19, 2015. (Doc. 48 at 26). That same day, Otto communicated with the City's legal counsel regarding Frazier's ongoing EEOC charge. (Doc. 50-6 at 52). In interview notes Otto forwarded to Human Resources he wrote, among other characteristics, that Frazier had "questionable loyalty." (Doc. 50-6 at 76). MCPB issued yet another list of potential candidates in order to permit Otto to interview two additional candidates. (Doc. 50-6 at 61). MCPB issued this list on February 22, 2016, and it included Frazier. (Doc. 50-6 at 65). Ultimately, Otto elected not to fill the position on even an interim basis, reasoning that his dissatisfaction with the applicant pool precluded such a move. (Doc. 50-6 at 37 (Otto explained that when you "do an interim" you convey to the selected person that "they're the one for the job[]")).

The City removed Otto from his position as Director of Parks and Recreation in February 2016. (Doc. 50-6 at 77). Replacing Otto was Matthew Capps. When Capps was elevated to Otto's position, Capps was informed of Frazier's discrimination allegations. (Doc. 50-7 at 10). Soon after his promotion, Capps opened the Recreation Superintendent job for applicants. Frazier again

---

[6] Frazier conceded and withdrew her gender-based discrimination claims with respect to both Superintendent of Recreation (second vacancy) and Director of Parks and Recreation (second vacancy). (Doc. 22 at 23 n. 3).

interviewed for the job in March but again was not selected. (Doc. 50-7 at 9). In fact, Capps did not

select anyone for the position, and it remained open. Frazier filed this case in August 2016 and claims

that she was not selected for the Superintendent position in retaliation for her previous EEOC

Charges.

### E. Director of Parks and Recreation – Second Vacancy

The Director of Parks and Recreation position became available once again in early 2016,

when Otto returned to his position as Parks Superintendent. (Doc. 50-6 at 44-45). Since then, Matthew

Capps has served in the Senior Director's position, a position that includes all of Otto's previous

duties. (Doc. 50-6 at 46; Doc. 48 at 29). Capps' promotion, according to Frazier, ran afoul of MCPB

rules requiring the position be open. Had the position been posted, Frazier contends she would have

applied. Frazier also contends that Capps' educational background did not comport with the

requirements for the job. (Doc. 48 at 30). As of October 2, 2017, Frazier states the Director of Parks

and Recreation remained officially unfilled and not open for applications. (Doc. 48 at 30).

## III. <u>Conclusions of Law</u>

### A. Summary Judgment Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). Rule 56(c) provides as follows:

> ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is
> genuinely disputed must support the assertion by:
> **(A)** citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations, stipulations
> (including those made for purposes of the motion only), admissions, interrogatory
> answers, or other materials; or
> **(B)** showing that the materials cited do not establish the absence or presence
> of a genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party

may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

    **(3) *Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.

    **(4) *Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to

be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

"To withstand a summary judgment motion, the non-moving party must establish that, based on the evidence in the record, there can be more than one reasonable conclusion as to the proper verdict." Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If a review of the evidence presented reveals that the non-movant has failed to produce evidence sufficient to support a jury verdict in his favor, then summary judgment should be granted." United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990). A sufficient issue exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

### B. Employment Discrimination Burden-Shifting Framework

Title VII bars covered employers from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex . . . ." 42 U.S.C.A. § 2000e-2. Employers are likewise prohibited from "discriminat[ing] against any of [its] employees or applicants for employment . . . because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "The test for intentional discrimination in suits under § 1981 is the same as that used in Title VII discriminatory treatment cases." Shumate v. Selma City Bd. of Educ., 928 F.Supp.2d 1302, 1318 (S.D. Ala. 2013).

Absent direct evidence of discrimination, a plaintiff may establish the McDonnell Douglas prima facie case of gender and race discrimination in the failure to promote context by showing: (1) the plaintiff's membership in a protected class; (2) the plaintiff was qualified and applied for the promotion; (3) the plaintiff was rejected despite her qualifications; and (4) the "employer either

continued to attempt to fill the positions or in fact filled the positions with persons outside of [her] protected class." Voudy v. Sheriff of Broward Cty. Florida, 2017 WL 2983892, at *3 (11th Cir. July 13, 2017).[7] To demonstrate a prima facie case for retaliation, the plaintiff must establish: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).

Once a plaintiff establishes the prima facie case, the burden of production (not persuasion) shifts to the employer to articulate a legitimate, non-discriminatory justification for the promotion decision. Holmes v. Alabama Bd. of Pardons & Paroles, 591 F. App'x 737, 742 (11th Cir. 2014) (citing Kidd v. Mando Am. Corp., 731 F.3d 1196, 1205 (11th Cir. 2013)). With respect to the legitimate reasons, the reasons offered must be "clear and reasonably specific" in order to afford the plaintiff an opportunity to show pretext. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258 (1981). The Eleventh Circuit has described this burden as "exceedingly light."[8] Conner v. Fort Gordon Bus Co., 761 F.2d 1495, 1499 (11th Cir. 1985) (quoting Perryman v. Johnson Products Co., Inc., 698 F.2d 1138, 1142 (11th Cir. 1983)). The reasons, however, must not be hypothetical, Voudy, 2017 WL 2983892, at *4 (quoting Walker, 158 F.3d at 1184), and there must be "evidence that asserted reasons [] were actually relied on[.]" Increase Minority Participation by Affirmative Change Today of Nw. Florida, Inc. (IMPACT) v. Firestone, 893 F.2d 1189, 1194 (11th Cir. 1990) (quoting Lee v. Russell

---

[7] As recent as July 2017, in Voudy, the Eleventh Circuit rejected a more stringent prima facie failure to promote standard requiring a plaintiff demonstrate both (1) the person promoted was a person outside the plaintiff's protected class and (2) the person promoted was equally or less qualified than the plaintiff. See Voudy v. Sheriff of Broward Cty. Florida, No. 16-12059, 2017 WL 2983892, at *3 (11th Cir. July 13, 2017). A plaintiff need only show the promoted individual is not a member of the plaintiff's protected class. Id.

[8] The exceedingly light burden refers to the burden of proof (in that no burden of persuasion exists at this juncture of the burden shifting analysis) but does not lessen the Supreme Court's articulation in Burden. See IMPACT, 893 F.2d at 1193 ("The statement that the burden was exceedingly light referred to the following part of the quotation which pointed out that there was no burden on the defendant to actually "prove" its reason. We did not mean, and of course we could not have meant, to hold that the burden of articulation was any less than that provided by the Supreme Court in Burdine.").

County Board of Education, 684 F.2d 769, 775 (11th Cir.1982)).

If the employer provides a legitimate, non-discriminatory reason for the promotion decision, the burden then shifts back to the plaintiff to produce evidence that the proffered reason was pretextual. Holmes, 591 F. App'x at 742. "If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007).

In order to successfully demonstrate pretext, the plaintiff must show "that the reason was false, and that discrimination was the real reason." Matthews v. City of Mobile, 2016 WL 1736061, at *11 (S.D. Ala. May 2, 2016), aff'd sub nom. Matthews v. City of Mobile, Alabama, 2017 WL 3500052 (11th Cir. Aug. 16, 2017). Mere contradiction of the legitimate, nondiscriminatory reasons alone does not create or support an inference of discriminatory action. Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1339 (11th Cir. 2015), cert. denied sub nom. Flowers v. Troup Cty., Georgia, Sch. Dist., 136 S. Ct. 2510 (2016). "A plaintiff can [show pretext] directly, by persuading the court that a discriminatory reason more likely than not motivated the employer, or indirectly, by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Paschal v. United Parcel Serv., 573 F. App'x 823, 825 (11th Cir. 2014) (quoting Alvarez, 610 F.3d at 1265)). Put differently, the plaintiff must put forth evidence from which a reasonable factfinder could conclude the reasons are "not believable." Jackson v. State of Alabama State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (citing Howard v. BP Oil Co., 32 F.3d 520, 526 (11th Cir.1994)).

**IV.** **Analysis**

   **A. Sex Discrimination Claims**

The Court reviews Frazier's claims of unlawful gender discrimination on a position-by-position basis. Frazier alleges the City did not promote her to Superintendent of Recreation and Director of Parks and Recreation based upon her sex.

### 1. Recreation Superintendent – First Vacancy

The City concedes that Frazier has established a prima facie case for gender discrimination. (See Doc. 44 at 5-9). Instead, it contends legitimate, non-discriminatory reasons supported its selection of Shine over Frazier as the Recreation Superintendent in 2014, namely that "she had less experience than [Shine]" and that Shine "was the most qualified for the . . . position." (Doc. 44 at 5). To support this stance, the City relies on the following: (1) at the time of the selection, Shine served as interim and had done so in excess of one year; (2) Shine had a background in recreation responsibilities; (3) Shine had extensive supervisory experience; and (4) the outgoing Director of Parks and Recreation recommended Shine.

Frazier argues these reasons amount to pretext. First, Frazier challenges the City's ability to use Shine's interim experience as a legitimate reason to hire him on a permanent basis because she points to this as evidence of preselection. (Doc. 49 at 8). However, there is nothing discriminatory about justifying the selection of someone on the basis of his or her interim service. Frazier's experience as an interim director for fourteen months is a legitimate, non-discriminatory reason to hire him on a permanent basis, notwithstanding the length of his interim designation violated City policy. The fact that Frazier's interim selection arguably resulted from a "subjective[]" or "unilateral[]" (Doc. 48 at 7) process does not render his selection on a permanent basis pretextual. Nor does Shine's interim service exceeding the time permitted by City policy support Frazier's argument of pretext. See Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1350 (11th Cir. 2007) (quoting Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995)) ("The mere

fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual."). See also Alexander v. Baldwin Cty. Bd. of Educ., 2008 WL 3551194, at *7 (S.D. Ala. Aug. 12, 2008) ("Indeed, preselection of the most qualified candidate is a legitimate nondiscriminatory reason.").

Frazier relies on Williams v. Georgia Public Safety Training Center, 2013 WL 4505816, at *5 (M.D. Ga. Aug. 22, 2013), wherein the Court faulted the preselection process because the decisionmaker "did not have first-hand knowledge of the candidates . . . ." Id. at *5. Here, White – who selected Shine on the interim basis – testified as to why she selected Shine over the two other applicants for the interim position, thereby demonstrating familiarity with each candidate. Second, and a critical reason the Court in Williams found pretext sufficient for the employee to advance past summary judgment, the Williams employer completely disavowed the employee's suggestion that preselection occurred and instead insisted the person chosen over the plaintiff was identified via a standardized hiring process, despite evidence to the contrary. Id. Here, the City credited Shine's preselection by using his interim experience as a reason to hire him on a permanent basis. Frazier not only knew about the interim position being available, her name was submitted to White's superiors as a "promotable" candidate. (Doc. 50-5 (White Dep., p. 57)). This scenario more closely resembles Springer "where the employer did not base its legitimate, nondiscriminatory reason on the claim that it undertook structured procedures to determine who to hire . . . [but] just said the person hired was more qualified." Williams, 2013 WL 4505816, at *5.

Frazier also argues Shine lacked requisite qualifications. (Doc. 49 at 7). The posting required "a minimum of a bachelor's degree . . . preferably supplemented by graduate courses in recreation administration, and a minimum of three years administrative experience in organized recreational

activities; or a combination of education and experience equivalent to these requirements." (Doc. 41-1 at 2.) Shine held an associate's degree in a field unrelated to recreation. He did not hold a bachelor's degree. (Doc. 49 at 7). However, it is not disputed Shine had 108 semester hours towards a bachelor's degree and extensive work experience, something the job announcement provided as an acceptable alternative. (See Doc. 41-1 at 2). Shine's name appeared on the eligible list (Doc. 41-12) and the interviewer believed Shine held a bachelor's degree. (Doc. 53-9 at 3). Thus, even if the interviewer mistakenly believed Shine held a bachelor's degree, this does not support Frazier's contention that the decision amounted to pretext for gender discrimination.

Frazier also argues the City's reliance on Shine's recreation experience constitutes a post hoc justification for his hire. In support, Frazier point to Otto's deposition, where he indicated he did not recall reviewing Shine's answers on the job application and he did not recall anything in Shine's interview. However, as Frazier concedes, Otto was aware Shine had experience in sports.

Frazier next contends the City's reliance on Shine's record of supervisory experience is belied by the record. (Doc. 49 at 9). Indeed, Frazier contends she supervised more individuals cumulatively than Shine, although Frazier and the City dispute what qualifies as supervise. But Frazier's quarreling with how Otto counted subordinates does not show in the least that the explanation is unworthy of credence or is a cover for sex discrimination.

Frazier also attacks White's recommendation. (Doc. 49 at 9). According to Otto, he derived the belief that White recommended Shine not from any specific conversation he could recall, but rather from her decision to appoint Shine as the interim director. (Doc. 50-6 at 5). In White's deposition, she could not recall whether she made a recommendation to Otto that he select Shine. (Doc. 50-5 at 17). Otto similarly could not recall a specific conversation in which White recommended Shine. (Doc. 50-6 at 5). However, when asked "who was [White's] recommendation"

(Doc. 50-6 at 5 (Otto Dep. p. 47)), Otto answered "Mr. Shine." Therefore, although he could not remember a specific conversation, Otto believed she had. (Doc. 50-6 at 6 (Otto Dep. p. 51)).

Frazier's attempt to dissect the City's reasons for hiring Shine, discredit his experience, and dispute White's recommendation fails to support that the stated reasons are "implausible" or "not believable." And more importantly, the plaintiff must put forward evidence to support inferences of unlawful discrimination. "Showing only that the employer's proffered reason is false does not necessarily entitle a plaintiff to get past summary judgment." Alvarez, 610 F.3d at 1264. Frazier has not pointed the Court to sufficient of evidence that the proffered reasons were pretext *for gender discrimination*. See Long v. McHugh, 2016 WL 4379430, at *7 (N.D. Ala. Aug. 17, 2016) (quoting Flowers for the proposition that outside one's own "say-so," lack of evidence to support inferences of discrimination is fatal to a plaintiff's summary judgment opposition).

Because Frazier has not established the City's reasons for selecting Shine are pretextual, the City's Motion for Summary Judgment with respect to Frazier's claim for failure to promote to the first Recreation Superintendent vacancy is **GRANTED**.

## 2. Director of Parks and Recreation – First Vacancy

For the first Director of Parks and Recreation vacancy, Frazier claims the City's decision to select Otto instead of her was based on her gender. (Doc. 1 at ¶ 56). The City maintains it did not promote Frazier for a legitimate, non-discriminatory reason, broadly that Otto was "the most qualified for the Director of Parks and Recreation position." (Doc. 44 at 9). Harkins, the decisionmaker, found Otto the most qualified for four reasons. The reasons, all of which are non-discriminatory, include: (1) White, the outgoing director, recommended Otto; (2) Otto had served as interim; (3) Otto had experience as Superintendent of Parks; and (4) Otto's "great" work ethic. (Doc. 44 at 9). Frazier contends the record of evidence creates a genuine issue of material fact as to all four reasons for the

City's non-selection of Frazier and argues that the City's reasons are pretextual. (Doc. 49 at 11).

Frazier again argues Harkins – the person conducting the hiring – unilaterally selected Otto for the position and that the procedure to hire Otto on a permanent basis undermines the City's claim that Otto's permanent hire resulted from an official interview process. (Doc. 49 at 11). Moreover, Frazier claims Otto's interim hire demonstrates pretext for the permanent selection. The Eleventh Circuit has held "preselection—even when in violation of the employer's policies—does not necessarily indicate discrimination."[9] Haugabrook v. Cason, 518 F. App'x 803, 808 (11th Cir. 2013). Absent other evidence suggesting sex discrimination, preselection alone is insufficient to survive summary judgment. Id.

Harkins' first reason (not in any order of importance) for selecting Otto over Frazier was that the outgoing Director recommended Otto. (Doc. 50-5 at 18 (White Dep. p. 101 & 108)). Frazier uses Harkins' own testimony that he takes such recommendations "with a grain of salt" to contradict his reason. (Doc. 50-12 at 14 (Harkins Dep. p. 103)). White recommended Otto, and even if Harkins took recommendations with a grain of salt he still considered them with "a combination of factors." (Doc. 50-12 at 14 (Harkins Dep. p. 104)). His subsequent remark explaining the degree to which he values recommendations is neither inconsistent nor contradictory. It merely reflects the hierarchy he places on recommendations.

Nor has the reason crediting Otto's parks experience been shown to be pretextual. Prior to his promotion, Otto served in the parks segment of the Parks and Recreation Department. (Doc 50-6 at 2 (Otto Dep. p. 20)). He first served as a horticulturist coordinator and later Parks Superintendent. (Doc 50-6 at 2 (Otto Dep. p. 20)). Harkins did not list Otto's recreation experience as a reason for selecting him over Frazier; only Otto's "experience in Parks." (Doc 50-12 at 13 (Harkins Dep. p. 99-100)).

---

[9] Frazier does not claim Harkins' selection of Otto for the interim role contravened City policy.

Harkins' belief that Otto had a lot of experience is neither false nor weak. Otto had served for Parks Superintendent for well over a decade. (Doc 50-6 at 2 (Otto Dep. p. 20)). Finally, the City's broadly defined "work ethic" description is supported by Harkins' own testimony. (See Doc. 50-12 at 12 (describing Otto as reliable, goal oriented, and well organized)).

Frazier has not produced "sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." Jackson, 405 F.3d at 1289 (quoting Howard, 32 F.3d at 526). Even viewed in a light most favorable to Frazier, no reasonable juror could examine the available evidence and infer unlawful gender animus motivated the City's decision to hire Otto over Frazier. The City's Motion with respect to Frazier's sex discrimination claim related to the City's failure to promote her to Recreation Superintendent is, as a result, **GRANTED**.

### B. Connie Hudson Senior Center Program Supervisor

Frazier interviewed for a Program Supervisor position at the Connie Hudson Senior Center with Shine and Otto after she filed EEOC Charges. (Doc. 48 at 18). She claims the failure to promote her results from unlawful race discrimination and retaliation.

#### 1. Racial Discrimination

The City argues Frazier failed to establish a prima facie case for racial discrimination. (See Doc. 44 at 11; Doc. 52 at 14). It suggests that "in light of Otto and Shine's selection of an African American to go to the next round, [Frazier] cannot show that their decision to eliminate [her] was because of her race." (Doc. 44 at 11). Put differently, the City argues Otto and Shine's decision to advance a member of Frazier's protected class to the final interview vitiates Frazier's prima facie case.

Merely advancing a member of the plaintiff's protected class to the next round of interviews

does not destroy a non-advanced plaintiff's prima facie case. See Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 20 (1st Cir. 2007) ("[T]he failure to treat all members of a class with similar discriminatory animus does not preclude a claim by a member of that class who is so treated."); Bell v. Bolger, 708 F.2d 1312, 1318 (8th Cir. 1983) ("Merely because other members of a protected class . . . were recommended by the review committee does not demonstrate an absence of discrimination."). See also Connecticut v. Teal, 457 U.S. 440, 455 (1982) ("It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group."). Instead, to successfully establish a prima facie case an employee must show her employer "either continued to attempt to fill the positions *or* in fact filled the positions with persons outside the plaintiff's protected class." Walker v. Mortham, 158 F.3d 1177, 1186 (11th Cir. 1998) (internal brackets omitted).[10] The City does not support – and the Court rejects – its argument that merely advancing, but not hiring, an African American somehow defeats Frazier's prima facie case. Here, the City selected Flowers (a Caucasian woman outside the plaintiff's protected racial class) for Program Supervisor. Frazier has therefore established a prima facie case.

The City next argues that legitimate, non-discriminatory reasons supported its decision to not select Frazier. (Doc. 44 at 12). Frazier responds by contrasting her qualifications with those of Flowers'. It is not the Court's duty to "decid[e] whom as between two candidates an employer *should* have hired." Kidd, 731 F.3d at 1206 (emphasis in original). Instead, the plaintiff must show disparities

---

[10] The City's proposed rule would significantly impair a plaintiff's ability to demonstrate a prima facie case. If the Court adopted such a rule, employers could harbor discriminatory intent and establish multiple rounds of interviews and advance – but not hire/promote – candidates belonging to a protected class in order to defeat all potential Title VII prima facie failure to promote claims. Furthermore, while the circumstances of the interview process required applicants advance in the candidate pool to ultimately be hired, Frazier does not sue the City for failure to be among the top three candidates. She sues because the City did not promote her. (Doc. 1 at ¶ 74). That promotion did not go to Penn (an African American woman who advanced to the final round interview) but instead to Flowers (a Caucasian woman). Thus, while it is true Shine and Otto advanced an African American individual (which might be circumstantial evidence of lack of racial animas), the City ultimately hired a Caucasian person for the position.

between her qualifications and those of the successful candidate "were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Id. (quoting Springer, 509 F.3d at 1349). Frazier has not put forth sufficient evidence to permit a reasonable factfinder to conclude Frazier's qualifications exceeded those of Flowers, such that racial animus in the City's decision could be inferred. Flowers acquired an advanced degree, managed a budget, and worked with seniors. A reasonable person very well could have selected Flowers over Frazier (even setting aside the credentials and experience Frazier contests).

Nor does the fact that the City broadened the selection process to include individuals within the City's employ indicate pretext for racial discrimination. Cooper simply directed the position be open to all applicants. Frazier and Flowers' names appeared on the certification registry. The City's Motion with respect to racial discrimination for the Recreation Program Supervisor is therefore **GRANTED**.

### 2. Retaliation

Summary judgment is appropriate when a plaintiff "fails to satisfy any one of the elements of a prima facie case." Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1433 (11th Cir. 1998). A plaintiff may satisfy the burden of causation by demonstrating "close temporal proximity between the statutorily protected activity and the adverse employment action." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).[11] The City argues Frazier failed to establish a prima facie case

---

[11] The Court acknowledges the ongoing debate as to whether Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013), requires a plaintiff prove "but for" causation during her prima facie case or after successfully demonstrating a prima facie retaliation claim. The Court need not weigh in on the dispute here because Frazier does not successfully rebut the City's non-discriminatory and legitimate reasons behind its decision to not promote her. Compare Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 251 n. 10 (4th Cir. 2015) (concluding the Eleventh Circuit requires but for evidence at the prima facie stage) with Edwards v. Montgomery Cty. Bd. of Educ., 2015 WL 758525, at *11 n. 5 (M.D. Ala. Feb. 23, 2015) (collecting cases suggesting "but for" analysis occurs after demonstrating a prima facie case).

for retaliation. Specifically, the City argues (1) she cannot establish Shine knew of her protected activity, (Doc. 52 at 19), and (2) the time from which Frazier first engaged in protected activity and suffered adverse employment action is too remote to establish causation.

The City first argues "[b]ecause there was not awareness by both decisionmakers, Plaintiff cannot establish causation." (Doc. 44 at 16). Shine, one of two decisionmakers, was unaware of Frazier's protected activity. However, Otto (the other decisionmaker) knew of Frazier's Charge "at least by" October 14, 2014. (Doc. 50-6 at 9 (Otto Dep. p. 62)). In instances in which two decisionmakers jointly render an adverse employment action (i.e., not advancing a candidate to the final round of interviews) must both know that the plaintiff engaged in statutorily protected conduct?

As the Eleventh Circuit has held, common sense tells us that a decisionmaker's lack of awareness of an employee's engagement in a protected activity renders the decisionmaker unable to retaliate on the basis of said activity. Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000). However, Courts should construe the causal link broadly; and because Otto knew Frazier filed an EEOC Charge, Shine's lack of knowledge does not convince the Court that Frazier cannot establish a prima facie case.[12]

The City also argues Frazier's prima facie claim fails because the time between her protected activity and adverse employment action is too remote. See Thomas, 506 F.3d at 1364 ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action."). Frazier filed her Charge on August 15, 2014 and suffered adverse employment action on December 12, when Shine informed Flowers of her selection. (Doc. 50-13 at 11 (Flowers Dep. p. 60)). Frazier, however, urges the Court to calculate temporal

---

[12] City cites to no case law for the proposition that one of the two decisionmaker's lack of knowledge of a plaintiff's protected activity undermines the plaintiff's prima facie case.

proximity beginning when Otto became aware of Frazier's filing, which Frazier claims occurred at least by October 14.[13] Frazier suffered adverse employment action two months from her suggested date and four months from the City's preferred starting date of her EEOC Charge. Frazier's preferred starting date likely brings the range within the temporal proximity requirement while the City's favored date leaves it outside the time frame. Compare Thomas, 506 F.3d at 1364 ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.") with Robinson v. LaFarge N. Am., Inc., 240 F. App'x 824, 829 (11th Cir. 2007) (finding a causal connection where the demotion occurred two months after filing a grievance).

Although Otto learning that Frazier filed an EEOC Charge is not a protected activity, the Court must consider the time when decisionmakers became aware, not simply when Frazier filed her EEOC Charge. Stone v. Geico Gen. Ins. Co., 279 F. App'x 821, 824 (11th Cir. 2008) (calculating temporal proximity from the time the decisionmaker, not the corporate employer, learned of employee's protected activity). See also Davis v. City of Lake City, 2013 WL 12091324, at *13 (M.D. Fla. Mar. 15, 2013) (calculating timespan from decisionmaker's awareness, not date of protected activity, when decisionmaker learned of protected activity later). Given the nature of the case, and viewing the facts in favor of the non-movant, the Court concludes Frazier can satisfy the third and final element to establish a prima facie case.

Even though the Court finds Frazier successfully demonstrated a prima facie case of retaliation, the City's summary judgment motion with respect to her retaliation claim is nonetheless **GRANTED**. The legitimate, non-discriminatory reasons the City offered in response to Frazier's

---

[13] The parties disagree as to when Otto first learned of Frazier's EEOC Charge. The City says "[a]t best, Otto became aware of Plaintiff's claim prior to September 2, 2014 . . ." but does not submit direct evidence to that effect. (Doc. 52 at 20 (citing Doc. 53-8 at 2)). Frazier claims Otto had "knowledge of Frazier's filing of the Charge on October 14, 2014 . . . ." (Doc. 49 at 16). A closer inspection of Otto's deposition reveals he had knowledge *by* – not necessarily on – October 14, 2014. (Doc. 50-6 at 9 (Otto Dep. at 62)).

racial discrimination claim apply equally to the analysis conducted here.

## C. Second Vacancies for Recreation Superintendent and Director of Parks and Recreation

The City first argues Frazier failed to exhaust her administrative remedies and is therefore barred with respect to the second vacancies of both Recreation Superintendent and Director of Parks and Recreation. (Doc. 44 at 20). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). "Prior to filing a Title VII action . . . a plaintiff first must file a charge of discrimination with the EEOC." Gregory v. Georgia Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004). This provides the EEOC the first opportunity to investigate the allegation and endeavor to obtain "voluntary compliance and promot[e] conciliation efforts." Gregory, 355 F.3d at 1279 (quoting Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir.1983). Therefore, "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination" limits the employee's judicial complaint, and plaintiffs need not file additional EEOC charges for retaliation claims that grow out of previous claims. Gregory, 355 F.3d at 1280 (quoting Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)).[14]

"[I]t is settled law that 'it is unnecessary for a plaintiff to file a subsequent EEOC charge before raising in federal court a retaliation claim growing out of an earlier charge.'" Lewis v. Eufaula City Bd. of Educ., 922 F.Supp.2d 1291, 1306 (M.D. Ala. 2012) (quoting Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988)) (internal brackets omitted). See also Gupta v. E. Texas State Univ., 654 F.2d 411, 414 (5th Cir. 1981) ("[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district

---

[14] The Eleventh Circuit has expressed reluctance to "allow procedural technicalities to bar claims brought under Title VII." Gregory, 355 F.3d at 1280 (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460-61 (5th Cir. 1970) (internal brackets omitted).

court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."); Houston v. Army Fleet Servs., L.L.C., 509 F.Supp.2d 1033, 1043 (M.D. Ala. 2007) ("[W]hen a retaliation claim is based on adverse actions taken against the employee *after* the initial EEOC charge is filed, it can be said that the retaliation claim grows out of a properly filed employment discrimination charge . . . .").

The Recreation Superintendent position became available again in April 2015, while Frazier's EEOC Charges were pending. Frazier's attorney supplemented her pending EEOC Charges with allegations that the City retaliated against her when the City did not promote her to the second Superintendent of Recreation vacancy. (Doc. 50-1 at 1). The letter "concern[ed] both charges to some degree[,]" her attorney wrote, and he alleged that the City's decision to not hire Frazier under the existing Employment Register amounted to "retaliati[on] against her for her protected activity." (Doc. 50-1 at 2). A letter from the City to an EEOC investigator reveals the EEOC desired information about the second Superintendent of Recreation vacancy to which Frazier applied. (See Doc. 50-2 at 1). The EEOC incorporated Frazier's subsequent claims of retaliation into its ongoing investigation. Frazier therefore satisfied the administrative requirements.

The City likewise contends Frazier failed to administratively exhaust her retaliation claim related to the second Director of Parks and Recreation vacancy. (See Doc. 44 at 20 & Doc. 52 at 24-25). The City argues Frazier did not put the City "on notice" of her claim. (Doc. 52 at 24-25). The Court finds her retaliation claim grew out of her earlier charge. Walker v. Indian River Transp. Co., 2017 WL 388921, at *11 (M.D. Fla. Jan. 27, 2017) ("To the extent [the plaintiff] alleges actions by [the employer] that were in retaliation for filing his EEOC Charge, he was not required to exhaust administrative remedies."); Woodruff v. Athens State Univ., 2016 WL 2957367, at *3 (N.D. Ala. May 23, 2016) (finding a retaliation claim was not administratively barred even though plaintiff did

not include the retaliation allegation in an EEOC Charge because "the facts alleged in the original charge would reasonably support an EEOC investigation into retaliation stemming from the initial charge"). Frazier's initial charges – and the facts contained therein – would reasonably support an EEOC investigation into retaliation on the basis of those multiple charges. As a result, the Court finds that her retaliation claim related to the City's decision not to promote her to the second Director of Parks and Recreation vacancy grew out of her previous EEOC Charges and is therefore not administratively barred.

### 1. Recreation Superintendent – Second Vacancy

Frazier's claim that Otto did not promote her to the second Recreation of Superintendent vacancy poses a more difficult question. This is because sufficient evidence exists for a reasonable jury to find that Otto's "questionable comment" remark included in his interview notes related to Frazier's EEOC Charges. Although Otto proffers a different explanation, when viewed in a light most favorable to Frazier, a reasonable jury could find her EEOC Chargers were **a** reason Otto did not promote Frazier.

Otto stated he did not promote Frazier because Otto believed she lacked necessary supervisory and budgetary experience. Indeed, next to where Otto wrote "questionable loyalty," he observed that she oversold her experience and the number of individuals she supervised. (Doc. 50-6 at 76). He repeated his criticisms of her lack of budgetary and supervisory experience during his deposition. When asked by Frazier's attorney why he chose to not promote Frazier, Otto responded "I didn't feel that she had the budgetary experience, the supervision experience." (Doc. 50-6 at 37 (Otto Dep. at 186-87)). In Otto's very next answer, he underscores Frazier's lack of experience by noting her place on the City's organizational chart. There were "at least two positions between [Frazier] and the superintendent position." (Doc. 50-6 at 37 (Otto Dep. at 187)). In his notations and in his deposition,

Otto identified three reasons to not promote Frazier, all of which are non-discriminatory and legitimate. Frazier, in response, has only quarreled with Otto's view of the depth of Frazier's experience. She has not demonstrated these reasons are implausible, unbelievable, or contradictory.

At this point, the burden is on Frazier to provide sufficient evidence that "but for" her engagement in a protected activity, Otto would have promoted her to Superintendent of Recreation. Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013) ("[A retaliation claim] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). One method of doing so is proving by a preponderance of the evidence that the reasons the City offered are pretext for unlawful retaliation. This she has failed to do. The only evidence bearing on this issue is that Otto questioned Frazier's loyalty. However, Frazier failed to rebut as pretextual the plausible reasons that she lacked supervisory and budgetary experience. See Mealing v. Georgia Dep't of Juvenile Justice, 564 F. App'x 421, 428 (11th Cir. 2014) (the defendant "is entitled to summary judgment unless all four reasons are pretextual . . .").

If a jury heard this claim, the only evidence Frazier has is Otto's comment and the argument that Otto may have questioned her loyalty.[15] This fails to make Otto's belief that Frazier lacked sufficient experience implausible. Nor does it change her ranking in the City's leadership hierarchy. In short, Frazier has not demonstrated the City's legitimate reasons are pretextual and therefore she has failed to prove but for causation. As a result, the City's Motion with respect to the Recreation Superintendent second vacancy position is **GRANTED**.

### 2. Director of Parks and Recreation – Second Vacancy

The parties disagree over how best to categorize the current status of the Director of Parks and Recreation position. According to the City, the position "was eliminated" while Otto served. (Doc.

---

[15] Again, Otto's explanation is that his "questionable loyalty" comment concerned internal office politics.

44 at 18). According to Frazier the "position remains unfilled and not open for applications." (Doc. 48 at 30). However, both parties agree that the City did not fill the position after Otto's departure. Even Frazier conceded the City "did not open [the Director of Parks and Recreation position] for application so there was no application or interview process . . . ." (Doc 48 at 30).

Because the City eliminated the position 14 months after Frazier's last charge date of December 24, 2014, the City contends the timing is too remote to demonstrate causation without additional evidence. (Doc. 44 at 23-24).[16] Frazier counters that under the first opportunity to retaliate doctrine, she *can* establish evidence sufficient to create causal connection. (Doc. 49 at 28).  As a result, Frazier submits that she has established a prima facie case for retaliation and that the City did not offer any legitimate reason for her non-selection.

Frazier cannot rely upon temporal proximity alone to establish a causal connection between her protected activity and the City's decision to not promote her to the Director of Parks and Recreation. The timespan between Frazier's final EEOC Charge, dated December 24, 2014, and the date the City took steps to eliminate the position, February 2016, is too remote to establish a causal connection.

Frazier likewise cannot rely upon the first opportunity doctrine because the City could have retaliated in a number of ways prior to the decision to eliminate the position.[17] Under the pattern of

---

[16] The City did not challenge Frazier's ability to establish that the failure to open the position for interviews constitutes an adverse employment action.

[17] Frazier misidentifies her argument – i.e., that the City's failure to promote Frazier was another instance of the City "taking advantage of each and every new opportunity to retaliate" – as the first opportunity doctrine. The first opportunity doctrine applies in instances of extended gaps from the date of protected activity and an employer's opportunity to retaliate, such as when an employee returns from a leave of absence after filing an EEOC Charge. See Dale v. Wynne, 497 F. Supp. 2d 1337, 1346 (M.D. Ala. 2007). Pattern of antagonism, by contrast, permits an establishment of causal connection when the employer exhibits "a pattern of behavior" following an employee's protected activity. Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div., 982 F.2d 892, 895 (3d Cir. 1993). See also Ward v. United Parcel Serv., 580 F. App'x 735, 739 (11th Cir. 2014) (citing Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) ("evidence of a 'pattern of antagonism' following the protected activity may give rise to the inference of causation")). Frazier correctly argued pattern of antagonism but incorrectly identified it.

antagonism argument, Frazier suggests the multitude of rejections (namely for Program Director and the second vacancy for both Recreation Superintendent and Director of Parks and Recreation) constitute a pattern of antagonistic behavior by the City. She offers the pattern of behavior argument in lieu of temporal proximity.   In Robinson, the Third Circuit upheld a finding of causal link where the employer engaged in a "constant barrage of written and verbal warnings, inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial Charges and continued until his discharge." Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div., 982 F.2d 892, 895 (3d Cir. 1993) (internal ellipses omitted). As the Third Circuit put it, establishing a causal connection

> . . . is not limited to timing and demonstrative proof, such as actual antagonistic conduct or animus. Rather, it can be other evidence gleaned from the record as a whole from which causation can be inferred. As we explained in Kachmar, "[i]t is important to emphasize that it is causation, not temporal proximity [or evidence of antagonism], that is an element of plaintiff's prima facie case, and temporal proximity [or antagonism] merely provides an evidentiary basis from which an inference can be drawn."

Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Even if the Court concluded the series of failures to promote Frazier constituted a pattern of antagonism, her argument still fails because "the alleged series of acts must itself begin close in time to the protected activity." Whetstone v. SL Alabama, LLC, 2014 WL 3894058, at *3 (M.D. Ala. Aug. 8, 2014) (citing Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998)). Here, the alleged pattern, beginning with the City's failure to promote her to Recreation Program Supervisor, occurred four months *after* Frazier filed her EEOC report. Four months between the protected activity and commencement of antagonistic retaliation is too distant, alone, to establish a causal connection sufficient to satisfy a prima facie case. Because Frazier failed to establish a prima facie case, the City's Motion for Summary Judgment with respect to the second Director of Parks and Recreation vacancy is **GRANTED**.

## V.     <u>Conclusion</u>

Based upon the foregoing, it is **ORDERED** that the City of Mobile, Alabama and the Mobile County Personnel Board's Motions for Summary Judgment (Docs. 39 & 42) are **GRANTED** as to all claims.

**DONE** the 31st day of January 2018.

<u>**/s/ Kristi K. DuBose**</u>
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**